The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Catherine E. Zienoff presiding. Good morning, counsel. This is case number 4-240562, the people of the state of Illinois versus Cortez, Houston. Would counsel for the appellant, please identify yourself for the record. My name is Dean Marask, M-O-R-A-S-K. Thank you. And would counsel for appellee identify himself also? I'm David Manchin with the appellate prosecutor's office. Thank you very much. At this time, Mr. Marask, you may begin your argument. Thank you, Your Honor. I may have pleased the court. We're here in regard to the one issue that I raised in my appellate brief, you know, whether the state proved beyond a reasonable doubt that there was specific intent to, uh, kill or do serious harm to this particular animal named Star. Uh, the case started with 14 counts related to two different addresses, alleging different offenses of animal cruelty, violation of owner's duties, et cetera, uh, the animal in question Star was found in a garage at my client's residence on Lappy street. Uh, as I put in my brief, ultimately after a motion for directed verdict argument that was, uh, lasted quite a long period of time, eight of the counts were dismissed. My client was ultimately convicted of, uh, essentially four counts, but the one that we're here for is the aggravated cruelty for which my client is presently serving time in the Illinois department of corrections. Um, my fundamental argument is that, you know, based on the facts and the evidence in the case that while my clients, uh, actions or inactions may have been reckless or even grossly reckless, uh, specific intent in this case was not proven beyond a reasonable doubt, uh, the evidence established in the case that, uh, there were at the Lappy address buckets of food. There was water that was available and this animal did not die of dehydration. Not only that the animal was a small animal, a small yellow dog. And the defendant was not there at the time that the, um, representatives of the Winnebago County, uh, animal care department were there. Um, the bottom line. Yes, go ahead. Finish your sentence, the bottom line. And then I'll ask my question.  You know, the, the bottom line is this dog wasn't shot. This dog wasn't strangled. This dog wasn't poisoned. The issue is, is the inaction of the defendant in the context of this case, does it qualify or establish specific intent, like an attempt murder case of a human being? And my position is it does not. When you look at the overall evidence and your honor, please question me. No. So you pointed out there were bowls of, uh, food bowls for food and water at the property. But there was also testimony. Was there not from both animal service employees that, um, these bowls were empty. So are you saying that the mere presence of these bowls establishes that the defendant did not intend to starve, um, starve this little animal? I don't think it's that simple. What I think it is that first the witnesses, uh, Lagerstam and the other officer, uh, they did not know whether the animals had been fed earlier that morning or the day previous. They couldn't testify whether that was true or not. And moreover, the statements that were introduced into evidence by the state allegedly made by my client on the phone, which were, by the way, never recorded by the investigating officer in the case. Uh, said my client allegedly said, yes, I, uh, fed, I came over in the morning and I fed the dogs.  He had a necropsy. Um, and I don't know if I'm pronouncing that exactly right. Uh, by the veterinarian here. And part of the results were that there were leaves and twigs in the dog's stomach. Um, obviously if the dog had been fed, there would have been some evidence of food in the dog's stomach instead of leaves. So we know that there was nothing in the dog's stomach. And we also know that there was no disease that, uh, the veterinarian found or evidence of disease or poison. And so certainly no more need for any further testing in this case. So we've got that evidence as well. Well, your honor, I respectfully disagree in regard to whether there was evidence of disease. There was no histopathology done. There was no, there were no, uh, samples of the dog's organs. There was no blood work that was ordered to me, the way I read Dr. Kasseline's conclusion. It was based on his gross observations of the animal as well as, you know, clearly his observations of the animal, while there was no apparent physical external observation of disease, that does not exclude the fact that had a histopathology been done as you would with a human being, obviously, then there could have been some cause other than what the doctor concluded for this animal's death. Well, the expert opinion of this doctor was that there was no need for histology to be done based on his observations as an expert. Isn't that the evidence? Well, that, that is part of the evidence. I think also, frankly, there was evidence and testimony that there's a cost factor that's involved in doing these kinds of tests. And that would, that was another reason why no histopathology was ordered. Uh, I, we also know the argument, go ahead. No, no, ma'am. Go ahead, please. You're the judge. I know this dog. I know it's a little hard to know who's finished and who's not. Um, we know that the dog wasn't an emaciated, was in an emaciated condition as well as the other dog that was found at the same property. So we've got that evidence as well. I agree. But I believe that evidence is more conducive to a conclusion of recklessness or gross recklessness, not a specific intent to kill. I mean, these dogs, you didn't argue recklessness in your brief counsel. Did you, you didn't raise that? No, I didn't raise it because you know, I was, my purpose was to attack the finding of specific intent. I didn't propose recklessness. Uh, though I think that common sense would dictate that that is the other, the only other mens rea that would fit into this offense. So what is your contention? What more would have been required beyond the, you, you felt that histology needed, what would have been required, uh, since you feel the evidence was totally inadequate to prove defendants intent here? Well, I, I, I did reference this in my brief judge that there was no evidence regarding over how long a period of time defendant would have had knowledge or this, of the condition of this dog who ultimately died. Well, I was found in a garage. Counsel, I'd like to, I'd like to ask a question. What's the relevance? How long does the defendant have to have the requisite intent? Well, the relevance is this, uh, in the lead case, which I cited in my brief, there was evidence that was brought out that through the pathology, the the veterinarian who testified as an expert that the condition under which the horse had suffered had gone on for, I think a couple of years. And therefore the individual who was responsible for the horse would have had ample knowledge that that condition had to be corrected that was also referenced in the case of people versus land, a conviction where aggravated cruelty was upheld where an expert testified that a dog had to be euthanized due to a three pound chain, having been attached to his neck, uh, something that it would have taken a month and a half to develop. In other words, the dog developed the reason why it died, because it had a chain around its neck for a month and a half that gives notice to the person who's taking care of a dog, that there's something wrong, but doesn't that go more towards the weight of that evidence? You know, we've got a situation here where there's medical, so to speak, testimony of starvation. We've at least got circumstantial evidence of no food in the stomach of this deceased dog, cold weather. Um, you know, um, it's just the level or the length of knowledge, um, seems to me goes more to how obvious it may have been, but still, if they created a condition where this dog was going to, a dog can freeze and die in a day. I mean, I guess that's, that's the point. Well, I understand what your honor is saying, but on the other hand, what person has the specific intent to kill an animal, uh, when that animal has the access to a heated garage? I mean, who turns on the lights for, and, uh, and the heat in a garage when you're intending to kill the animal? Why not close the garage? Just let the animal live outside and dying in the elements. If that's your intent. Well, I think inherent here is, and I, I guess introduced the weather, but inherent here is the dog was in a weakened state having not eaten and thus starved out in the weather. Counsel also, did you mean to put your jacket on? Is that just a, oh, I'm so sorry. Not a problem. I know. I'm just so used to doing zoom judge and I forgot to, I'm a very, I'm a very old school guy, judge. So honestly, I, uh, I apologize for that. No problem.  So I do think that the matter of how long, you know, clearly if the state, look at it this way, if the state had evidence that, you know, animal control had been out two weeks before and seen this dog in a really bad condition and told them, you need to get this dog to a vet. You need to feed this dog. You need to take care of this dog. And the dog's in a worse condition two weeks later when they go there, there wouldn't have been a trial in this case. I mean, that, that would clearly show an intent to ignore the needs of the dog and perhaps specific intent to go. All I'm saying in this case is based on this evidence that the state did not meet its burden of proof regarding specific intent as a mens rea. And that's my argument, your honor. Well, your client admitted that these were his dogs. Um, he did try to indicate at one point that his wife was responsible for feeding them as well, but that he didn't want to his response to some of the questioning from the investigators was that he didn't want to pay the fees are fine, so these dogs weren't necessarily registered. Um, but he also admitted that he did go to feed them every day. So he had to have noticed the emaciated condition of this dog actually have both dogs. Well, that's one conclusion your honor can reach. I still believe that the evidence did not establish specific intent beyond a reasonable doubt based on the overall evidence in the case. Counsel, I understand your argument. It's a good argument defense attorney can make before a jury, but we're past that point. Jury found, we're not talking about recklessness. I understand that you don't need to argue that and erase it. You simply need to show that the intent wasn't proved, but now we're at the appellate court. So how does this court grant your relief? Well, I believe the evidence has a stated pursuant to the standard was so improbable or unsatisfactory as to raise a reasonable doubt of guilt in regard to the men's raid and the case. That's my argument. You know, I reviewed the, you know, obviously I didn't try the case judge. So, I mean, I reviewed the record for issues that were, I could raise in good faith. This is the issue that I could raise in good faith based on the law. Thank you. Counsel, I have nothing else unless your honors do. Well, I had one other question with respect to you contended in your brief that Robards was clearly distinguishable from our case, and I'm really not sure how any of the differences really matter here. In that case the dogs were left after the owner moved out in an empty house. There was no access to outdoors. There was no water, no food left. How is that really different from our case? And wouldn't that case really be important as a precedent here to show on the issue we're talking about the intent? I think it is different judge in terms of the extremes of Robards are much more extreme than the facts of our case. I mean, essentially the defendant of Robards might as well have taken the animal to the Sahara desert and let it go and just die of dehydration and not provide any source of water or any sustenance whatsoever in our case, we know the facts are that there were available buckets for food at the Lappy Address, there was water that was available and this dog did not die of dehydration. We know that there's evidence that my client stated that he did feed the dogs. And so I think Robards is distinguishable from the facts of our case. Well, I think there was also a testimony with respect to the hose, if you're referring to there was water and that being a hose, the testimony of the investigator was that the hose was chewed up and there was nothing that could come out of this hose. We don't know if the dog might've eaten snow. I mean, I believe it was winter time when all this happened. So, um, you know, I mean, you're not contending, are you, that your client is not guilty because, or couldn't have been found guilty because the dog died of starvation only and, um, not dehydration? No, I'm not saying that judge. I'm saying that he did provide water in this water. And the fact that at least some water was provided is evidenced by the fact that the expert did not give dehydration as a cause of death. Sorry. I don't have any other questions. Um, uh, justice, uh, Kevin, do you have any other questions? No. Thank you. Justice Cushow, do you have any other questions, any questions at this time? All right. Uh, then, uh, counsel, you will have time on rebuttal. Thank you, Mr. Manchin. Thank you, your honors. May it please the court, counsel, the question on appeal is taking the evidence in the light most favorable to the state. Could any rational trier effect find the evidence sufficient to convict beyond a reasonable doubt? And in doing so, the court must allow all reasonable inferences in favor of the state. The evidence here is sufficient to allow a reasonable jury to conclude the defendant had the intent to kill. You are presumed to intend the natural and probable consequences of your act. And when you do an act that whose nature is such to cause death and great bodily harm, you're presumed to intend that harm. And I submit that that applies here because everybody knows if you don't feed a dog, it's going to die. Well, counsel, good morning. The opposing counsel told us and mentioned that the evidence included bowls for food and water included a hose that was at the property. We know that there was testimony from the defendant or that the defendant told the investigator that he did go to feed the dogs on a regular basis. So how do you respond to counsel's argument that the presence of those items and that evidence really would diminish the proof regarding specific intent? Well, the jury heard that evidence and rejected it as establishing a reasonable doubt of guilt. The fact that there's a bowl there means nothing when there's no food there. The defendant claimed that he fed the dog was disproved by the necropsy that showed there was no food in his stomach. The defendant also said, I fed the dog and was there and there's nothing wrong with the dog. So do you believe the defendant's statement that he's feeding the dog when he says there's nothing wrong with it? Because looking at the pictures, you can tell that these dogs had not been left. A dog does not get that skinny that fast. Let's just put it that way. You've got two different sets of dogs that the defendant has taken care of at two separate locations, all of them in various stages of starvation or malnutrition, and this particular one star ending up dead. I think based on that evidence, the jury could conclude that the defendant did in fact have the intent to kill. He admits he's in charge of them. He admits he's there feeding them, but at the same time, the evidence shows they weren't being fed. The necropsy refuted any claim that they had been fed that morning. The claim that their water was provided was also disputed, that there was testimony that the hose was not on, they could not get water from it, and he was not charged with killing the dogs by dehydration, so speculation as to other causes of death, what the defendant is asking this court to do is to act as a second trier fact and to try out different scenarios or possibilities as to how the evidence could be interpreted in his favor, and that is simply not the standard of review on appeal. It's take the evidence in the light most favorable to the state, and here the evidence in the light most favorable to the state was that these dogs, this dog died of starvation, the defendant by his own admission was taking care of them, so he had to have known the dog's condition, and the fact that he allows the dog to die from not being fed, it's clear the jury could find that clear evidence of an intent to kill. And how do you respond to opposing counsel's argument with respect to the heated garage, that this dog had access to a heated garage, which does that diminish the intent of the defendant here, the intent to? I don't recall any testimony that the heat was actually on in the garage. I also remember testimony that the dogs may have had to chew their way into the garage, but my recollection at this point in time, it isn't quite clear which place it was that they had to chew their way into the garage, so I apologize to the court in that regard. But I think the evidence of the conditions at both places, I think, has to be taken together as far as the defendant's intent. You also look at the defendant's statement to the police. He was told that the dog died of starvation, and his response, oh, that's natural causes. I think that shows his consciousness of guilt right there, that he knew he should be feeding those dogs, and he just wasn't doing it, and that means that the death was intentional, or the jury could find that it was intentional. The length of time, how long, I agree with Justice Cadena, that goes to the weight. If there's evidence that the dogs have been starving for six months, the inference of an intent is greater, but even if he just did it for two days, and I submit that a dog does not get that skinny in just two days, I mean, just based on common sense and common knowledge. So you don't need an expert to say that these dogs were, or this dog was starved for two weeks, two months, or whatever, and the Lee case doesn't state that you have to have evidence of time. It was just referring to the facts of that case. I think this case is more close to Robards than to either Lee or Kilpatrick, cited by the defendant. And I wanted to mention that. He's basically saying this case is on all fours with that case, and that you cannot infer the intent from the nature of the actions, but performing an operation on a dog with the intent of saving the dog's life is a whole range of difference than just not feeding the dog, period. So on that basis... I think that's, you're referring to Kirkpatrick. Yes. The fifth district case. Okay. Yes. Okay. I was just distinguishing it because he seems to say that this is on all fours with the, almost seems to say this case is on all fours or governed by that, and that the inference of intent cannot be raised in animal cruelty cases like this. But I think the, and there they said it applies generally, but it did not apply to the specific facts of the case based on the nature of the defendant's acts, which were ambiguous, shall we say, where there was a clear intent that was contrary to the intent to kill. Here, there is no other possible intent there. Other than to kill, that when you don't feed a dog. I think the jury reached the correct conclusion. The, all the facts regarding was, was the garage heated? Was there water provided? That was all before the jury and they just simply concluded, and it's a reasonable conclusion, that not feeding the dogs showed an intent to kill. Especially where the defendant is claiming to have fed them, but the evidence disproves it, he claims to have fed them, but there was absolutely nothing wrong with them, which again, raises questions as to the defendant's credibility of his claim that he's feeding them, or he was there that day. So I submit that there is just simply no basis for this court to substitute judgment for the, that of the jury, given the standard of a review. Well, wouldn't it have been a little clearer if the veterinarian had done the additional testing or ordered the additional testing and then, rather than relied on his own observations of, his own gross observations of the dog's condition to decide not to do it? Maybe it would have been clearer or cleaner, but that does not mean there's a reasonable doubt of guilt, because the standard is you don't look for evidence of innocence and, interpret it in favor of the defendant. You have to take the evidence in the light most favorable to the state. His conclusion was that the dog died of starvation and there was, based on Connie's examination, there was no need for any further examination, cost being a factor, but he just simply said that there was enough there to show it was death. Speculation as to a different cause of death, I don't think raises a reasonable doubt, because assume the dog had, I don't know, mange, being, whatever other underlying condition there was, not being a fed would have definitely contributed to the death and it would, the other disease that might have been caught by a, by further testing would not have, would not have disproved the conclusion that the, that starvation was the cause of death, either solely or contributing to whatever underlying condition that could have been found by these other tests. And the conclusion that something else could be found is total speculation that cannot be relied upon to raise reasonable doubt of guilt. So if I have, if there are no further questions from the court, I will stand upon my brief and the argument today. Thank you. Justice Kavanaugh. Anything further? No, not for me. This is Grisham. No, thank you. Thank you. All right. Thank you, Mr. Morask. You have time for rebuttal. Judge. I'm going to wave that right at this time. Um, and open myself to any other questions that your honors may have thought of during the, during the argument. I don't have any, uh, Justice Kavanaugh. Do you have any? No, thank you. Justice Grisham. Do you have any? All right. All right. Thank you very much to both of you counsel for your arguments this morning. The court will take the matter under advisement and render a decision in due course. Uh, the court stands in recess at this time.